Robinson, J.
The answer of the defendant in error, while a disclaimer of intention to issue bonds-under the resolution of the board of December 8, 1920, does not amount to a disclaimer of intention to erect the Huron bridge upon the site indicated in the original resolution. It does, however, make a moot question of the inquiry as to the power of the board of county commissioners to expend the $5,000,000 authorized by the electors of the county, or any portion of it, in the acquisition of the site and the erection of a bridge, the aggregate cost of *470 which will be in excess of that amount, and this court, respecting the good faith of the defendant in error will not consider that question further than to state that it adheres to the doctrine enunciated in the case of State, ex rel. Stanton, v. Andrews, 105 Ohio St., 489, 138 N. E., 873. Nor will it attempt in this case to pronounce a rule defining what lapse of time, or what intervening circumstances, will render stale an authorization to expend in excess of $18,000, under Sections 5638 and 5642-1, General Code, being of opinion that in the instant case there has been no showing which would make the authorization stale.
This cause will be here decided upon the power of the board of county commissioners to build bridges under the provisions of Sections 2421 and 7557, General Code. The source and extent of the power of the board of county commissioners is statutory. The power to build bridges within municipalities is conferred by Section 2421, General Code:
“The commissioners shall construct and keep in repair necessary bridges over streams and public canals on state and county roads, free turnpikes, improved roads, abandoned turnpikes and plank roads in common public use. * * *”
And by Section 7557, General Code:
“The county commissioners shall cause to be constructed and kept in repair, as provided by law, all necessary bridges in villages and cities * * * on all state and county roads, free turnpikes, improved roads, transferred and abandoned turnpikes and plank roads, which are of general and public utility, running into or through such village or city.”
*471 It is conceded by counsel for the board of county commissioners that these sections do not authorize the board to build bridges other than “over streams and public canals on state and county roads, free turnpikes, improved roads,” and over “transferred and abandoned turnpikes and plank roads, which are of general and public utility,” whether within or without a municipality; but it is the contention of the defendant in error that the site of the proposed Huron-Lorain bridge is substantially upon two state roads, in that the western terminus of the bridge will rest upon such a road and the eastern terminus will rest near another such road, and much reliance is placed upon the decision of the circuit court of Cuyahoga county in the case of State, ex rel. Howell, v. Eirick et al., Commrs., reported in 14 Ohio Cir. Ct. R. (N. S.), 577, and 17 Ohio Cir. Ct. R. (N. S.), 331, affirmed by this court without opinion in 84 Ohio. St., 503, 95 N. E., 1156. That case, however, is readily distinguishable from the instant case, in that the bridge in question there was built as nearly as practicable on a state or county road; it being necessary from a practical engineering standpoint to make the bridge straight rather than to follow the sinuosities of the theretofore existing state or county road. Nor does it follow, because the decision of the circuit court was affirmed in that case by this court without opinion, that, in the absence of a specific declaration to. that effect, this court adopted the reasoning of the court below; such affirmance being effective only to sustain the judgment and to make the enunciation by the court below the law of the case.
*472 In the instant case the Brooklyn-Carlisle road, upon which it is proposed to rest the southwestern terminus of the bridge, was laid out in 1833 as beginning at the southwesterly bank of the Cuyahoga river and running in a general southwesterly direction to the township of Carlisle, in Lorain county. That part, however, of the Brooklyn-Carlisle road which was actually opened up and subsequently included within the municipal limits of the city of Cleveland, and known as Lorain street, was never opened beyond the brow of the hill, about 2,500 feet distant from the southwesterly bank of the Cuyahoga river, and no road has ever existed beyond that point. By virtue of a statute thereafter enacted (Section 4636, Revised Statutes [51 O. L., p. 303]), to the effect that “any state road or part of such road which has heretofore been authorized, which remains unopened for public use for the space of ten years, shall be vacated and the authority for opening revoked for non-user,” the authority for opening that portion of the Brooklyn-Carlisle road from the brow of the hill to the river was revoked for nonuser. There was not, therefore, in 1914, nor has there since been, any county or state road upon the line, or approximately upon the line, established in 1833 as the Brooklyn-Carlisle road for a distance of approximately 2,500 feet from the southwestern bank of the Cuyahoga river.
In 1832 the Cleveland-Akron road, was surveyed, the northwestern terminus of which was at a post at the now south end of the northeast'line of Ontario street, at an intersection with Huron road, a distance of approximately 500 feet from the northeastern bank of the Cuyahoga river. The river is *473 about 239 feet wide, making the gap between the two state or. county roads about 3,239 feet, over which no state or county road, or road of any kind, ever existed, and at which point no crossing of the river by bridge, ferry, ford, or other means ever existed. The proposal is to build a bridge spanning this space of 3,239 feet, including the Cuyahoga river, and to thereby connect the Brooklyn-Carlisle road, which runs substantially northeast and southwest, with the Cleveland-Akron road, which runs substantially northwest and southeast.
That the Legislature has the power to authorize the board of county commissioners to so connect two distinct state or county roads, and to do so without the formality of first creating a state or county road, making such connection with proper provision for compensation and damages for property taken or depreciated, must be conceded; but the Legislature does not appear to have done so, for it has provided that the commissioners shall construct and keep in repair necessary bridges over streams and public canals on state and county roads and that “the county commissioners shall cause to be constructed and kept in repair * * * bridges in villages and cities * * I* on all state and cou/nty roads.” Beyond that it has not gone.
This contemplated bridge cannot, by any stretch of the imagination, be held to be on either a county road or on two county roads; but the most that can be said for it is that it is to be between two county roads, where no connecting road theretofore existed. It does not follow, however, that the board of county commissioners may not, by proper proceedings, acquire the power to build a bridge upon *474 the site indicated by their resolution of 1914, for. the Legislature has provided by Section 6949, General Code, that:
“The board of county commissioners may construct a proposed road improvement into, within or through a municipality, when the consent of the council of said municipality has been first obtained. ”
The conceded facts being that no state or county road exists between the termini of the proposed bridge, it therefore follows that until such time as the board of county commissioners has laid out and acquired a road according to law between such termini it is without power to construct the bridge upon such site.
The judgment of the Court of Appeals will be reversed. The defendant in error will be enjoined from expending the sum authorized by the election of November 3, 1914, or any portion thereof, until such time as a state or county road is laid out and acquired according to law between the termini of the proposed bridge; and the court, accepting as a disclaimer the answer of the defendant filed herein, that it has no intention to expend any portion of the sum authorized by the election of November 3, 1914, in the acquiring of a site or the erection of a bridge which cannot be completed for the aggregate sum authorized in such election, makes no order in that respect.

Judgment reversed.

Marshall, C. J., Wanamaker, Jones, Matthias, Day and Allen, JJ., concur.